**WILDE & ASSOCIATES**
Gregory L. Wilde, Esq.
Nevada Bar No. 004417
208 South Jones Boulevard
Las Vegas, Nevada 89107
Telephone:  702 258-8200
bk@wildelaw.com
Fax:  702 258-8787
and
MARK S. BOSCO, ESQ.
Arizona Bar No. 010167
TIFFANY & BOSCO, P.A.
2525 East Camelback Road, Suite 300
Phoenix, Arizona 85016
Telephone: (602) 255-6000

Electronically Filed on _____

The Bank of New York Mellon, fka The Bank of New York as Successor in interest to JPMorgan Chase Bank, NA as Trustee for Structured Asset Mortgage Investments II Inc. Bear Stearns ALT-A Trust 2005-9, Mortgage Pass-Through Certificates, Series 2005-9
09-73970

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

In Re:

Paul Cerqua

                    Debtor.

BK-09-19632-bam

Date: 9/29/09
Time: 1:30pm

Chapter 13

## <u>MOTION FOR RELIEF FROM AUTOMATIC STAY</u>

The Bank of New York Mellon, fka The Bank of New York as Successor in interest to JPMorgan Chase Bank, NA as Trustee for Structured Asset Mortgage Investments II Inc. Bear Stearns ALT-A Trust 2005-9, Mortgage Pass-Through Certificates, Series 2005-9, Secured Creditor herein, ("Secured Creditor" or "Movant" hereinafter), alleges as follows:

1.    That on or about June 6, 2009, the above named Debtors filed their current Chapter 13 Petition in Bankruptcy with the Court.

2.      Secured Creditor is the current payee of a promissory note dated July 25, 2005 in the principal sum of $210,036.00 ("Promissory Note" herein), secured by a Real Property Trust Deed of same date ("Trust Deed" herein) upon property generally described as 9156 Mackanos Avenue, Las Vegas, NV 89148, and legally described as follows:

Parcel I:
Lot Twenty-Four (24) WESTCHESTER HILLS - UNIT 1 as shown by map thereof on file in Book 120 of Plats, page 1, In the Office of the County Recorder of Clark County, Nevada.

Reserving Therefrom, an easement for ingress, egress, use and enjoyment over the Common Lots as shown upon the map of said subdivision and as set forth in that certain Declaration of Covenants, Conditions and Restrictions for Westchester Hills recorded November 2, 2004 in Book 20041102 of Official Records, as Document No. 0003740, as now or hereafter amended.

Parcel II:
An easement for ingress, egress, use and enjoyment over the Common Lots as shown upon the map of said subdivision and as set forth in that certain Declaration of Covenants, Conditions and Restrictions for Westchester Hills recorded November 2, 2004 In Book 20041102 of Official Records, as Document No. 0003740, as now or hereafter amended.

("subject property" herein).

3.      Secured Creditor is informed and believes, and, based upon such information and belief, alleges that title to the subject property is currently vested in the name of Debtor and that the Debtor is in default of the loan obligations.

4.      With respect to secured Creditor's trust deed the following is due and owing:

| | |
|---|---|
| Unpaid Principal Balance | $207,420.65 |
| 3 Monthly Payments at $1,366.31 (July 1, 2009 – September 1, 2009) | $    4,098.93 |
| 2 Late Charges at $57.26 each (July 16, 2009 – August 16, 2009) | $       114.52 |
| Motion Filing Fee | $       150.00 |
| Attorneys Fees | $       750.00 |

Total Arrearages                                    $  5,113.45

Furthermore, a payment becomes due on October 1, 2009and on the first (1st) day of every month thereafter, and a late charge becomes due on any payment not paid within fifteen (15) days from the date the monthly payment is due.

     5.     Movant is informed and believes and therefore alleges that the Debtor and bankruptcy estate have insufficient equity in the property.  The fair market value of the property pursuant to Debtor's Schedule "A" is $150,000.00, less ten percent (10%) cost of marketing, less the first and second secured liens resulting in insufficient equity.  Therefore, secured creditor is not adequately protected.  A true and correct copy of the Debtor's Schedule "A" is attached hereto as Exhibit "A".

     6.     Secured Creditor has elected to initiate foreclosure proceedings on the Property with respect to the subject Trust Deed; however Secured Creditor is precluded from proceeding to publish the necessary notices and commence said foreclosure action during the pendency of this Bankruptcy.

     7.     Secured Creditor has incurred to date attorney's fees of approximately $750.00.

     8.     Secured Creditor urges that this Court issue and Order herein permitting this Secured Creditor to proceed to a Foreclosure Sale of the Property, including necessary action to obtain possession of the Property.

     9.     Secured Creditor's Information Sheet as to the extent of liens and encumbrances against the subject property is attached hereto as Exhibit "B" and incorporated herein by reference. Secured Creditor will seek leave of Court to specify any further encumbrances against the subject property at the time of hearing.

     10.     Rick A. Yarnall has been appointed by this Court the Chapter 13 Trustee in this instant Bankruptcy proceeding.  By virtue of the position as Trustee of the estate of Debtor herein, Debtor holds title to the subject property in that capacity.  To the extent the relief sought herein is granted, Respondent, Rick A. Yarnall, Trustee, is bound any such judgment.

     11.     This Court has jurisdiction of this action pursuant to the provisions of 11 U.S.C. Section 362(d).

12.     Secured Creditor asserts that a foreclosure proceeding has not been initiated concerning the subject property. As a result, Secured Creditor asks the Court to waive the requirement of notifying other lien holders as detailed in Local Rule 4001 (a)(1). Such lien holders will be notified of a foreclosure proceeding if and when one is initiated.

WHEREFORE, Secured Creditor prays judgment as follows:

(1)     For an order granting relief from the Automatic Stay, and permitting this Secured Creditor to move ahead with foreclosure proceedings under this Secured Creditor's Trust Deed and to sell the subject property at a Foreclosure Sale under the items of said Trust Deed including necessary action to obtain possession of the Property.

(2)     For a finding that Rule 4001(a)(3) of the Rules of Federal Bankruptcy Procedure is not applicable and Secured Creditor may immediately enforce and implement the order for relief from the automatic stay.

(3)     In the alternative, an Order requiring the Debtor to reinstate and maintain all obligations due under all of the trust deeds encumbering the subject property and further allowing Secured Creditor with the remedies to proceed with foreclosure should the Debtor not maintain payments.

(4)     For attorneys' fees and costs of suit incurred herein.

(5)     For such other and further relief as this Court deems appropriate.

DATED _____9/2/09_____.

**WILDE & ASSOCIATES**

By____ **/S/GREGORY L. WILDE**_____
          **GREGORY L. WILDE, ESQ.**
          Attorney for Secured Creditor
          208 South Jones Boulevard
          Las Vegas, Nevada 89107

Assessor's Parcel Number:
176-20-210-024
Return To: Pulte Mortgage, LLC

7475 S. Joliet St.
Englewood, CO 80112
Attn:  Sales & Acquisitions
Prepared By: Pulte Mortgage, LLC

7475 South Joliet Street Englewood,
Co 80112
Recording Requested By: Pulte Mortgage, LLC

7475 South Joliet Street
Englewood, Co 80112
0140 2012 BR

CERTIFIED TO BE A TRUE COPY OF
THE ORIGINAL
LAWYERS TITLE OF NEVADA, INC.
BY

## DEED OF TRUST

VRU# 1-888-679-6377

MIN 100057400002239699

THIS DEED OF TRUST is made this 25th          day of July, 2005                 ,
among the Grantor, Paul R Cerqua  An Unmarried Man

(herein "Borrower"),

Lawyers Title of Nevada

(herein "Trustee"), and the Beneficiary,
Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, as hereinafter
defined, and Lender's successors and assigns).  MERS is organized and existing under the laws of
Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel.
(888) 679-MERS. Pulte Mortgage, LLC

, ("Lender") is organized and
existing under the laws of Delaware                                      , and has an address of
7475 South Joliet Street  Englewood, CO 80112

NEVADA- SECOND MORTGAGE-1/80-FNMA/FHLMC UNIFORM INSTRUMENT WITH MERS

Form 3829   Amended 2/04
VMP-76N(NV) (0402).01
Page 1 of 8          Initials: PRC
VMP Mortgage Solutions
(800)521-7291

NV71AFORM78-1574     (Rev. 01/05)

BORROWER, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of Clark , State of Nevada:
See attached legal description

which has the address of         9156 Mackanos Ave      ,      Las Vegas     ,
                                [Street]                              [City]

Nevada          89148            (herein "Property Address");
              [ZIP Code]

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), all of which shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are hereinafter referred to as the "Property". Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Deed of Trust; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Deed of Trust.

TO SECURE to Lender the repayment of the indebtedness evidenced by Borrower's note dated July 25, 2005         and extensions and renewals thereof (herein "Note"), in the principal sum of U.S. $39,381.00           , with interest thereon, providing for monthly installments of principal and interest, with the balance of the indebtedness, if not sooner paid, due and payable on August 1, 2035        ; the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust; and the performance of the covenants and agreements of Borrower herein contained.

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest.** Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and

NV71BFORM78-1574

-76N(NV) (0402).01            Page 2 of 8

Initials

Form 3829

assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such a holder is an institutional lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed of Trust that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed of Trust.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

**4. Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

**5. Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

6. **Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold. If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

7. **Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Deed of Trust. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

8. **Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

9. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

10. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Deed of Trust granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

11. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Deed of Trust, but does not execute the Note, (a) is co-signing this Deed of Trust only to grant and convey that Borrower's interest in the Property to Trustee under the terms of this Deed of Trust, (b) is not personally liable on the Note or under this Deed of Trust, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Deed of Trust or the Note, without that Borrower's consent and without releasing that Borrower or modifying this Deed of Trust as to that Borrower's interest in the Property.

12. **Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

13. **Governing Law; Severability.** The state and local laws applicable to this Deed of Trust shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of federal law to this Deed of Trust. In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the

provisions of this Deed of Trust and the Note are declared to be severable. As used herein, "costs," "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

14. **Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Deed of Trust at the time of execution or after recordation hereof.

15. **Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

16. **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Deed of Trust. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Deed of Trust.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Deed of Trust. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Deed of Trust without further notice or demand on Borrower.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Acceleration; Remedies. Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Deed of Trust, including the covenants to pay when due any sums secured by this Deed of Trust, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Deed of Trust and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Deed of Trust to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees.**

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold and shall cause such notice to be recorded in each county in which the Property or some part thereof is located. Lender shall mail copies of such notice in the manner prescribed by applicable law to Borrower and to the other persons prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the lapse of such time as may be required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Trustee may determine. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or Lender's designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property so sold without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees and costs of title evidence; (b) to all sums secured by this Deed of Trust; and (c) the excess, if any, to the person or persons legally entitled thereto.

Initials: _____

Form 3829

**18. Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Deed of Trust due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Deed of Trust discontinued at any time prior to the earlier to occur of: (i) the fifth day before sale of the Property pursuant to the power of sale contained in this Deed of Trust or (ii) entry of a judgment enforcing this Deed of Trust if: (a) Borrower pays Lender all sums which would be then due under this Deed of Trust and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Deed of Trust; (c) Borrower pays all reasonable expenses incurred by Lender and Trustee in enforcing the covenants and agreements of Borrower contained in this Deed of Trust, and in enforcing Lender's and Trustee's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assume that the lien of this Deed of Trust, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Deed of Trust shall continue unimpaired. Upon such payment and cure by Borrower, this Deed of Trust and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

**19. Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

**20. Reconveyance.** Upon payment of all sums secured by this Deed of Trust, Lender shall request Trustee to reconvey the Property and shall surrender this Deed of Trust and all notes evidencing indebtedness secured by this Deed of Trust to Trustee. Trustee shall reconvey the Property without warranty and without charge to the person or persons legally entitled thereto. Such person or persons shall pay all costs of recordation, if any.

**21. Substitute Trustee.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by applicable law.

**22. Waiver of Homestead.** Except to the extent prohibited by law, borrower waives all right of homestead exemption in the Property.

**23. Assumption Fee.** Lender may charge an assumption fee of U.S. $   currency which does not            . exceed the amount set by HUD.

### REQUEST FOR NOTICE OF DEFAULT
——————————— AND FORECLOSURE UNDER SUPERIOR ———————————
### MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Deed of Trust to give Notice to Lender, at Lender's address set forth on page one of this Deed of Trust, of any default under the superior encumbrance and of any sale or other foreclosure action.

Initials

Form 3829

IN WITNESS WHEREOF, Borrower has executed this Deed of Trust.

_____ (Seal)          _____ (Seal)
Paul R Cerqua              -Borrower                                   -Borrower


_____ (Seal)          _____ (Seal)
                           -Borrower                                   -Borrower


_____ (Seal)          _____ (Seal)
                           -Borrower                                   -Borrower


_____ (Seal)          _____ (Seal)
                           -Borrower                                   -Borrower

**STATE OF NEVADA**
**COUNTY OF Clark**

This instrument was acknowledged before me on $\qquad$ July 27,2005 $\qquad$ by
Paul R Cerqua


CHELSEA HIGASHI
Notary Public State of Nevada
No 05-94570-1
My appl exp Aug. 26, 2008

Mail Tax Statements To:
Paul R Cerqua
9156 Mackanos Ave. Las Vegas. NV  89148

File No: 01402012

# EXHIBIT "A"

All that certain real property situated in the County of Clark, State of Nevada, described as follows:

Parcel I:

Lot Twenty-Four (24) WESTCHESTER HILLS – UNIT 1 as shown by map thereof on file in Book 120 of Plats, page 1, in the Office of the County Recorder of Clark County, Nevada.

Reserving Therefrom, an easement for ingress, egress, use and enjoyment over the Common Lots as shown upon the map of said subdivision and as set forth in that certain Declaration of Covenants, Conditions and Restrictions for Westchester Hills recorded November 2, 2004 in Book 20041102 of Official Records, as Document No. 0003740, as now or hereafter amended.

Parcel II:

An easement for ingress, egress, use and enjoyment over the Common Lots as shown upon the map of said subdivision and as set forth in that certain Declaration of Covenants, Conditions and Restrictions for Westchester Hills recorded November 2, 2004 in Book 20041102 of Official Records, as Document No. 0003740, as now or hereafter amended.

Assessor's Parcel Number:        176-20-210-024

# PLANNED UNIT DEVELOPMENT RIDER
### VRU# 1-888-679-6377    MIN# 10005740002239699

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 25th                      day of
July, 2005                                     , and is incorporated into and shall be
deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the
"Security Instrument") of the same date, given by the undersigned (the "Borrower") to
secure Borrower's Note to Pulte Mortgage, LLC

(the "Lender") of the same date and covering the Property described in the Security
Instrument and located at: 9156 Mackanos Ave, Las Vegas, NV  89148

#### [Property Address]
The Property includes, but is not limited to, a parcel of land improved with a dwelling,
together with other such parcels and certain common areas and facilities, as described in
Declarations of Covenants, Conditions, and Restrictions

(the "Declaration"). The Property is a part of a planned unit development known as
Westchester Hills

#### [Name of Planned Unit Development]
(the "PUD"). The Property also includes Borrower's interest in the homeowners association or
equivalent entity owning or managing the common areas and facilities of the PUD (the
"Owners Association") and the uses, benefits and proceeds of Borrower's interest.

PUD COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

A. PUD Obligations. Borrower shall perform all of Borrower's obligations under the PUD's
Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of
incorporation, trust instrument or any equivalent document which creates the Owners
Association; and (iii) any by-laws or other rules or regulations of the Owners Association.
Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the
Constituent Documents.

**PUD1FORM78-15741    (Rev. 10/04)**

MULTISTATE PUD RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3150 1/01

VMP-7R (0405)

Page 1 of 3                      Initials:
VMP Mortgage Solutions, Inc. (800)521-7291

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

PUD2FORM78-15741

-7R (0405)                    Page 2 of 3          Initials          Form 3150 1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (Seal)          _____ (Seal)
Paul R Cerqua              -Borrower                                  -Borrower


_____ (Seal)          _____ (Seal)
                           -Borrower                                  -Borrower


_____ (Seal)          _____ (Seal)
                           -Borrower                                  -Borrower


_____ (Seal)          _____ (Seal)
                           -Borrower                                  -Borrower


VMP-7R (0405)  PUD3FORM78-15741         Page 3 of 3                    Form 3150 1/01



Pulte Mortgage
1-866-213-2019


Christie,

I am stating that I do **not** know why there were inquiries to my
credit report on November 29, 2004.  I have not opened any new
credit account nor have I purchased a new car or home.


Sincerely,

Paul R. Cerqua
15 Simon Sayles Rd
Lincoln RI 02865-1313
(401)475-8900  H
(401)368-0198  C

78-145720A
VRU# 1-888-679-6377
MIN# 100057400001983370

# ADJUSTABLE RATE NOTE

### (LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

| July 25, 2005 | Las Vegas | Nevada |
|---|---|---|
| [Date] | [City] | [State] |

9156 Mackanos Ave, Las Vegas, NV  89148
[Property Address]

CERTIFIED TO BE A TRUE COPY OF
THE ORIGINAL
LAWYERS TITLE OF NEVADA, INC.

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 210,036.00 BY          (this amount is called "Principal"), plus interest, to the order of Lender. Lender is Pulte Mortgage, LLC

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of          6.625 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on September 1, 2005. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on August 1, 2035          , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 7475 South Joliet Street  Englewood, CO 80112

or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 1,159.58          . This amount may change.

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

---

**MULTISTATE ADJUSTABLE RATE NOTE - LIBOR SIX-MONTH INDEX (AS PUBLISHED IN *THE WALL STREET JOURNAL*) - Single Family - Fannie Mae UNIFORM INSTRUMENT**

-83BN (0210)

Form 3520 1/01

VMP MORTGAGE FORMS - (800)521-729

M92A (Rev. 01/04)

Page 1 of 4          Initials:

"CERTIFIED TO BE A TRUE AND CORRECT COPY OF THE ORIGINAL."

Pulte Mortgage LLC



78-145720A

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The interest rate I will pay may change on the first day of August, 2010 , and on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding Two And One-quarter percentage points ( 2.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 11.625 % or less than 2.250 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One percentage point(s) ( 1.000 %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 11.625 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**M92B**

-838N (0210)

Page 2 of 4

Form 3520 1/01

Initial:



78-145720A

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:





78-145720A

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)                _____ (Seal)
Paul R Cerqua                              -Borrower                                                              -Borrower

_____ (Seal)                _____ (Seal)
                                           -Borrower                                                              -Borrower

_____ (Seal)                _____ (Seal)
                                           -Borrower                                                              -Borrower

_____ (Seal)                _____ (Seal)
                                           -Borrower                                                              -Borrower

*[Sign Original Only]*

-838N (0210)          **M92D**                    Page 4 of 4                         Form 3620 1/01

78-145720A

# INTEREST-ONLY ADDENDUM TO ADJUSTABLE RATE PROMISSORY NOTE

**THIS ADDENDUM** is made July 25, 2005, and is incorporated into and intended to form a part of the Adjustable Rate Note (the "Note") dated the same date as this Addendum executed by the undersigned and is payable to **Pulte Mortgage, LLC** (the "Lender").

**THIS ADDENDUM** supersedes Sections 3(A), 3(B), 4(C) and 7(A) of the Note. None of the other provisions of the Note are changed by this Addendum.

## 3. PAYMENTS

### (A)    Time and Place of Payments

I will pay interest by making payments every month for the first 120 payments (the "Interest-Only Period") in the amount sufficient to pay interest as it accrues. I will pay principal and interest by making payments every month thereafter for the next 240 payments in an amount sufficient to fully amortize the outstanding principal balance of the Note at the end of the Interest-Only Period over the remaining term of the Note in equal monthly payments.

I will make my monthly payments on the first day of each month beginning on **September 1, 2005**. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before principal. If, on **August 1, 2035** I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my payments at **7475 South Joliet Street  Englewood, CO 80112**, or at a different place if required by the Note Holder.

### (B)    Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. **$1,159.58** . This payment amount is based on the original principal balance of the Note. This payment amount may change.

78-145720A

## 4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (C)    Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Two And One-quarter** percentage point(s) (**2.250 %**) to the Current Index for such Change Date. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D), this rounded amount will be my new interest rate until the next Change Date.

During the Interest-Only Period, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay accrued interest. This will be the amount of my monthly payment until the earlier of the next Change Date or the end of the Interest-Only Period unless I make a voluntary prepayment of principal during such period. If I make a voluntary prepayment of principal during the Interest-Only Period, my payment amount for subsequent payments will be reduced to the amount necessary to pay interest at the then current interest rate on the lower principal balance. At the end of the Interest-Only Period and on each Change Date thereafter, the Note Holder will determine the amount of the monthly payment that would be sufficient to repay in full the unpaid principal that I am expected to owe at the end of the Interest-Only Period or Change Date, as applicable, in equal monthly payments over the remaining term of the Note. The result of this calculation will be the new amount of my monthly payment. After the end of the Interest-Only Period, my payment amount will not be reduced due to voluntary prepayments.

## 7.    BORROWER'S FAILURE TO PAY AS REQUIRED

### (A)    Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000%** of my overdue payment of interest during the interest-only period, **5.000%** of my overdue payment of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____          _____
Paul R Cerqua                         - Borrower                                          - Borrower


_____ (Seal)   _____ (Seal)
                                      - Borrower                                          - Borrower


Form 603B 03/03/03
P-90ADN2                                    Page 2 of 2

**NOTE**

CERTIFIED TO BE A TRUE COPY OF
THE ORIGINAL
LAWYERS TITLE OF NEVADA
BY

78-157416A
VRU# 1-888-679-6377
MIN# 100057400002239699

July 25, 2005               Las Vegas                    Nevada
*Date*                      *City*                        *State*

9156 Mackanos Ave, Las Vegas, NV 89148
*Property Address*

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 39,381.00          (this amount will be called
"principal"), plus interest, to the order of the Lender. The Lender is  Pulte Mortgage, LLC

. I understand that the Lender may transfer this
Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note will be
called the "Note Holder."

**2. INTEREST**

I will pay interest at a yearly rate of            11.000 %.
Interest will be charged on unpaid principal until the full amount of principal has been paid.

**3. PAYMENTS**

I will pay principal and interest by making payments each month of U.S. $ 375.04
I will make my payments on the  1st         day of each month beginning on September 1                ,
2005         . I will make these payments every month until I have paid all of the principal and interest and any other charges,
described below, that I may owe under this Note. If, on August 1, 2035
I still owe amounts under this Note, I will pay all those amounts, in full, on that date.

I will make my monthly payments at 7475 South Joliet Street  Englewood, CO 80112
or at a different place if required by the Note Holder.

**4. BORROWER'S FAILURE TO PAY AS REQUIRED**

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any of my monthly payments by the end of  15
calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be
5.000  % of my overdue payment, but not less than U.S. $ 18.75              and not more than
U.S. $ 18.75           . I will pay this late charge only once on any late payment.

(B) Notice From Note Holder

If I do not pay the full amount of each monthly payment on time, the Note Holder may send me a written notice telling me
that if I do not pay the overdue amount by a certain date I will be in default. That date must be at least 10 days after the date on
which the notice is mailed to me or, if it is not mailed, 10 days after the date on which it is delivered to me.

(C) Default

If I do not pay the overdue amount by the date stated in the notice described in (B) above, I will be in default. If I am in
default, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the
interest that I owe on that amount.

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described
above, the Note Holder will still have the right to do so if I am in default at a later time.

(D) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be
paid back for all of its costs and expenses to the extent not prohibited by applicable law. Those expenses include, for example,
reasonable attorneys' fees.

**5. THIS NOTE SECURED BY A DEED OF TRUST**

In addition to the protections given to the Note Holder under this Note, a Deed of Trust, dated
July 25, 2005                        , protects the Note Holder from possible losses which might result if I do not keep
the promises which I make in this Note. That Deed of Trust describes how and under what conditions I may be required to
make immediate payment in full of all amounts that I owe under this Note.

---

**NEVADA** - SECOND MORTGAGE - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT

Page 1 of 2

Form 3929

-75(NV) (0204).01  NV70A (Rev. 12/02)   VMP MORTGAGE FORMS - (800)521-7291

Initials

78-157416A

## 6. BORROWER'S PAYMENTS BEFORE THEY ARE DUE

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in a letter that I am doing so. A prepayment of all of the unpaid principal is known as a "full prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment."

I may make a full prepayment or a partial prepayment without paying any penalty. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no delays in the due dates or changes in the amounts of my monthly payments unless the Note Holder agrees in writing to those delays or changes. I may make a full prepayment at any time. If I choose to make a partial prepayment, the Note Holder may require me to make the prepayment on the same day that one of my monthly payments is due. The Note Holder may also require that the amount of my partial prepayment be equal to the amount of principal that would have been part of my next one or more monthly payments.

## 7. BORROWER'S WAIVERS

I waive my rights to require the Note Holder to do certain things. Those things are: (A) to demand payment of amounts due (known as "presentment"); (B) to give notice that amounts due have not been paid (known as "notice of dishonor"); (C) to obtain an official certification of nonpayment (known as a "protest"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Note Holder if I fail to keep my promises under this Note, or who signs this Note to transfer it to someone else also waives these rights. These persons are known as "guarantors, sureties and endorsers."

## 8. GIVING OF NOTICES

Any notice that must be given to me under this Note will be given by delivering it or by mailing it by certified mail addressed to me at the Property Address above. A notice will be delivered or mailed to me at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by certified mail to the Note Holder at the address stated in Section 3 above. A notice will be mailed to the Note Holder at a different address if I am given a notice of that different address.

## 9. RESPONSIBILITY OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each of us is fully and personally obligated to pay the full amount owed and to keep all of the promises made in this Note. Any guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to do these things. The Note Holder may enforce its rights under this Note against each of us individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note. Any person who takes over my rights or obligations under this Note will have all of my rights and must keep all of my promises made in this Note. Any person who takes over the rights or obligations of a guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to keep all of the promises made in this Note.

| _____ (Seal) | _____ (Seal) |
| Paul R Cerqua                -Borrower | -Borrower |
| _____ (Seal) | _____ (Seal) |
| -Borrower | -Borrower |
| _____ (Seal) | _____ (Seal) |
| -Borrower | -Borrower |
| _____ (Seal) | _____ (Seal) |
| -Borrower | -Borrower |

*[Sign Original Only]*

78-145720A
VRU# 1-888-679-6377
MIN# 10005740001983370

# ADJUSTABLE RATE NOTE

(LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

July 25, 2005                    Las Vegas                    Nevada
[Date]                              [City]                           [State]

9156 Mackanos Ave, Las Vegas, NV  89148
[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U S $210,036 00                (this amount is called "Principal"), plus interest, to the order of Lender  Lender is Pulte Mortgage, LLC

I will make all payments under this Note in the form of cash, check or money order

I understand that Lender may transfer this Note  Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder "

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid  I will pay interest at a yearly rate of                6 625 %  The interest rate I will pay may change in accordance with Section 4 of this Note

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note

**3. PAYMENTS**

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month

I will make my monthly payments on the first day of each month beginning on September 1, 2005  I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note  Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal  If, on August 1, 2035                , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date "

I will make my monthly payments at 7475 South Joliet Street  Englewood, CO 80112

or at a different place if required by the Note Holder

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U S $1,159 58                This amount may change

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay  The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note

**MULTISTATE ADJUSTABLE RATE NOTE - LIBOR SIX-MONTH INDEX (AS PUBLISHED IN *THE WALL STREET JOURNAL*) -** Single Family - Fannie Mae UNIFORM INSTRUMENT

838N (0210)          **Form 3520 1/01**

VMP MORTGAGE FORMS  (800)521 7291          M92A (Rev. 01/04)

Page 1 of 4          Initials

78-145720A

**4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES**

(A) Change Dates

The interest rate I will pay may change on the first day of August , 2010                        , and on that day every
6th         month thereafter  Each date on which my interest rate could change is called a "Change Date "

(B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index  The "Index" is the average of interbank offered rates for six month U S  dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*  The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index "

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information  The Note Holder will give me notice of this choice

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding Two  And  One-quarter
                                                           percentage points (          2.250 %) to the Current
Index  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point
(0 125%)  Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments  The result of this calculation will be the new amount of my monthly payment

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than                     11 625 %
or less than               2 250 %  Thereafter, my interest rate will never be increased or decreased on any single
Change Date by more than One                              percentage point(s) (          1 000 %)
from the rate of interest I have been paying for the preceding 6          months  My interest rate will never be greater
than           11 625 %

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date  I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change  The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice

**5.  BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due  A payment of Principal only is known as a "Prepayment "  When I make a Prepayment, I will tell the Note Holder in writing that I am doing so  I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge  The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note  However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note  If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes  My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment  However, any reduction due to my partial Prepayment may be offset by an interest rate increase

**6.  LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from me that exceeded permitted limits will be refunded to me  The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me  If a refund reduces Principal, the reduction will be treated as a partial Prepayment

833N #0310s        M92B                              Page 2 of 4                              Form 3520 1/01

78-145720A

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of  15  calendar days after the date it is due, I will pay a late charge to the Note Holder  The amount of the charge will be  5  000  % of my overdue payment of principal and interest  I will pay this late charge promptly but only once on each late payment

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount  That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law  Those expenses include, for example, reasonable attorneys' fees

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed  Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things  Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note  The Note Holder may enforce its rights under this Note against each person individually or against all of us together  This means that any one of us may be required to pay all of the amounts owed under this Note

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor  "Presentment" means the right to require the Note Holder to demand payment of amounts due  "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions  In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note  That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note  Some of those conditions read as follows

-838N (0310)     M92C                          Page 3 of 4                         Form 3529 1/01



78-145720A

**Transfer of the Property or a Beneficial Interest in Borrower** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law Lender also shall not exercise this option if (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee, and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption  Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument  Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)          _____ (Seal)
Paul R Cerqua                   -Borrower                                   -Borrower

_____ (Seal)          _____ (Seal)
                                -Borrower                                   -Borrower

_____ (Seal)          _____ (Seal)
                                -Borrower                                   -Borrower

_____ (Seal)          _____ (Seal)
                                -Borrower                                   -Borrower

*[Sign Original Only]*

M92D

-838N (0210)                              Page 4 of 4                    Form 3520 1/01

78-145720A

# INTEREST-ONLY ADDENDUM TO ADJUSTABLE RATE PROMISSORY NOTE

THIS ADDENDUM is made July 25, 2005, and is incorporated into and intended to form a part of the Adjustable Rate Note (the "Note") dated the same date as this Addendum executed by the undersigned and is payable to Pulte Mortgage, LLC (the "Lender")

THIS ADDENDUM supersedes Sections 3(A), 3(B), 4(C) and 7(A) of the Note  None of the other provisions of the Note are changed by this Addendum

**3.    PAYMENTS**

    **(A)    Time and Place of Payments**

I will pay interest by making payments every month for the first 120 payments (the "Interest-Only Period") in the amount sufficient to pay interest as it accrues  I will pay principal and interest by making payments every month thereafter for the next 240 payments in an amount sufficient to fully amortize the outstanding principal balance of the Note at the end of the Interest-Only Period over the remaining term of the Note in equal monthly payments

I will make my monthly payments on the first day of each month beginning on September 1, 2005  I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note  Each monthly payment will be applied as of its scheduled due date and will be applied to interest before principal  If, on August 1, 2035 I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date "

I will make my payments at 7475 South Joliet Street  Englewood, CO 80112, or at a different place if required by the Note Holder

    **(B)    Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U S  $1,159.58  This payment amount is based on the original principal balance of the Note  This payment amount may change

Form 601E  03/03/03
P-90ADN1  01/04                     Page 1 of 2

78-145720A

**4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES**

   **(C)    Calculation of Changes**

   Before each Change Date, the Note Holder will calculate my new interest rate by adding Two And One-quarter percentage point(s) **(2.250 %)** to the Current Index for such Change Date  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point **(0 125%)**  Subject to the limits stated in Section 4(D), this rounded amount will be my new interest rate until the next Change Date

   During the Interest-Only Period, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay accrued interest  This will be the amount of my monthly payment until the earlier of the next Change Date or the end of the Interest-Only Period unless I make a voluntary prepayment of principal during such period  If I make a voluntary prepayment of principal during the Interest-Only Period, my payment amount for subsequent payments will be reduced to the amount necessary to pay interest at the then current interest rate on the lower principal balance  At the end of the Interest-Only Period and on each Change Date thereafter, the Note Holder will determine the amount of the monthly payment that would be sufficient to repay in full the unpaid principal that I am expected to owe at the end of the Interest-Only Period or Change Date, as applicable, in equal monthly payments over the remaining term of the Note  The result of this calculation will be the new amount of my monthly payment  After the end of the Interest-Only Period, my payment amount will not be reduced due to voluntary prepayments

**7.    BORROWER'S FAILURE TO PAY AS REQUIRED**

   **(A)    Late Charge for Overdue Payments**

   If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder  The amount of the charge will be **5.000%** of my overdue payment of interest during the interest-only period, **5.000%** of my overdue payment of principal and interest thereafter  I will pay this late charge promptly but only once on each late payment

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____        _____          _____
Paul R Cerqua                                        - Borrower                                   - Borrower


_____ (Seal)  _____ (Seal)
                                                  - Borrower                                          - Borrower

Form 603E  03-03-03
P-90ADN2                              Page 2 of 2

B6A (Official Form 6A) (12/07)

In re    **PAUL CERQUA**                                                          Case No. _____
_____,
                              Debtor

## SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

**Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim." If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| **RESIDENCE**<br>**9156 MACRANOS AVE**<br>**LAS VEGAS NV 89148**<br>**2005** | - | | 150,000.00 | 299,040.24 |

|  | | |
|---|---|---|
| Sub-Total > | **150,000.00** | (Total of this page) |
| Total > | **150,000.00** | |

**0**   continuation sheets attached to the Schedule of Real Property

(Report also on Summary of Schedules)

Copyright (c) 1996-2009 - Best Case Solutions - Evanston, IL - (800) 492-8037



EXHIBIT

Best Case Bankruptcy

## ** SECTION 362 INFORMATION SHEET **

Paul Cerqua
DEBTOR(S)

Chapter 13
Case No.: 09-19632-bam

The Bank of New York Mellon, fka The Bank of New York as Successor in interest to JPMorgan Chase Bank, NA as Trustee for Structured Asset Mortgage Investments II Inc. Bear Stearns ALT-A Trust 2005-9, Mortgage Pass-Through Certificates, Series 2005-9
MOVANT

PROPERTY INVOLVED IN THIS MOTION: 9156 Mackanos Avenue, Las Vegas NV 89148

NOTICE SERVED ON: Debtor(s) _____ x _____; Debtor (s) Counsel _____ x _____; Trustee _____ x _____

DATE OF SERVICE: _____

| MOVING PARTY'S CONTENTIONS: | DEBTOR'S CONTENTIONS: |
|---|---|
| The EXTENT and PRIORITY of LIENS: | The EXTENT and PRIORITY of LIENS: |
| 1st The Bank of New York Mellon, fka The Bank of New York as Successor in interest to JPMorgan Chase Bank, NA as Trustee for Structured Asset Mortgage Investments II Inc. Bear Stearns ALT-A Trust 2005-9, Mortgage Pass-Through Certificates, Series 2005-9 (PB $207,420.65) | 1st _____ |
| 2nd Citi Mortgage (PB $91,620.24) | 2nd _____ |
| Total Encumbrances: $299,040.89 | Total Encumbrances: $ _____ |
| APPRAISAL or OPINION as to VALUE: "Per attached Schedule "A" $150,000.00 | APPRAISAL or OPINION as to VALUE: |
| TERMS OF MOVANT'S CONTRACT WITH THE DEBTOR | OFFER OF "ADEQUATE PROTECTION" FOR MOVANT: |
| Amount of Note: $210,036.00<br>Interest Rate: 6.625<br>Duration: 30 Year<br>Payment Per Month: $ 1,365.01<br>Date of Default: July 1, 2009<br>Amount of Arrearages: $5,113.45<br>SPECIAL CIRCUMSTANCES: **I, Gregory L. Wilde, hereby certify that an attempt has been made to confer with debtor(s) counsel, or with debtor(s) and that more than two (2) business days have expired, and that after sincere effort to do so, counsel has been unable to resolve this matter without court action.** | |
| | SPECIAL CIRCUMSTANCES: |
| SUBMITTED BY: _____<br>SIGNATURE: /S/GREGORY L. WILDE | SUBMITTED BY: _____<br>SIGNATURE: _____ |

EXHIBIT D